USA v. Samaritan, et al.                   CR-97-042-M    11/04/99
                    UNITED STATES DISTRICT COURT

                        DISTRICT OF NEW HAMPSHIRE


United States of America,
        Plaintiff

        v.                                    Criminal No. 97-42-1-5-M

Samaritan Health Systems, Inc.,
Heart Trace of Nashua, Inc.,
John W. Conway,
Donnie W. Lawson, and
Norman P. Lehrman,
        Defendants


                              **O R D E R**


        Defendant Lehrman's latest motion to continue trial – this
time until after January 1, 2000 – due to his medical condition,
was denied on the record for the following reasons.

        The motion was filed on the eve of trial.  It is supported
only by a letter from Dr. Hal S. Blatman and Lehrman's own oral
proffer at the final pretrial conference.  Dr. Blatman, according
to his stationery, is a physician practicing in the field of pain
management and occupational and environmental medicine.  Lehrman
began seeing Dr. Blatman in January of this year.  According to
Dr. Blatman, as of about a month ago defendant "continues to
experience a high level of pain in his hands and feet, with
burning in his forearms and legs."  Letter to William A. Brown,
Esq., dated September 30, 1999 (document no. 111).  The source or
cause of defendant's alleged (and presumably self-reported) pain
is not disclosed, but it seems reasonable to conclude that it
relates to his apparent diabetic condition.  Dr. Blatman further

reports that "[o]pioid medication serves to make [defendant] less miserable, however it does not allow him to function and walk without pain." Id. Dr. Blatman also suggests, without much detail, that "[h]igher levels of medication further reduce his pain level and more greatly [a]ffect his ability to think and concentrate." Id. Apparently defendant is taking both "conventional and alternative therapies" to improve his condition. Id.

It is Dr. Blatman's opinion that defendant's ability to withstand the rigors of trial "is severely compromised by his condition." And, he opines, again without specificity, that defendant's "mental function is altered by his medication and these conditions will also adversely affect his ability to assist his counsel." Id. Counsel, however, has not suggested any mental incapacity – naturally occurring or medication-induced – that might render defendant incompetent to stand trial, and counsel has not moved for a psychiatric or psychological examination on those grounds. The court did not perceive any mental incapacity or note any other reason to think Lehrman might not be mentally competent to stand trial.

This is the defendant's sixth motion to continue – each previous motion also sought additional time to resolve or stabilize his medical difficulties. For example, in September of 1998, Lehrman submitted a letter from Dr. Paul T. Chandler in support of a motion to continue. Exhibit A to document no. 89. Then, Dr. Chandler recommended that defendant's trial be put off,

2

for medical reasons, until January of 1999. Dr. Chandler cautioned that he would monitor defendant's condition and, if no improvement occurred, would "strongly recommend" that he not go to trial until after January 1999. The court deferred to Dr. Chandler and granted the motion, continuing trial until March of 1999.

In February of 1999, Dr. Chandler wrote another letter in support of another motion to continue. Exhibit B to document no. 89. Dr. Chandler recited the severe debilitating pain defendant allegedly suffered – advising that "he can not actually drive a car. He does not attempt to drive a car and uses family members to accomplish this for him." Id. Dr. Chandler's basis of knowledge for those statements is not revealed – it's reasonable to conclude that defendant told him so. Dr. Chandler also reported that defendant was essentially chair-bound: "Standing for any period of time is impossible and without medication the pain limits his standing to no more than 15 minutes at a time." Again, presumably defendant told him so. Dr. Chandler concluded that, "[i]t is hard to estimate a time at which he could participate in his defense but I don't think it is likely to occur in this calendar year." Id. That continuance request was also granted and the case was rescheduled until October of 1999.

Another motion was filed on August 27, 1999, seeking a continuance until sometime after January 1, 2000. Dr. Chandler, defendant's personal physician again wrote a letter (to the prosecutor) in support of the motion. Exhibit C to document no.

3

89.   This time Dr. Chandler alluded not only to defendant's now familiar complaints of pain, but also to a seemingly new development – unspecified mental problems, i.e. "[defendant] believes he is no longer mentally competent to handle his affairs . . . he does not feel that he is capable to assist in his defense or testify effectively in his own behalf." Id. Dr. Chandler voiced his agreement with defendant's self-evaluation, and, while conceding that he [Dr. Chandler] is "not really qualified to comment on these matters" (not being trained in psychiatry or psychology), he nevertheless offered that "[p]erhaps an endocrinologist and psychiatrist could evaluate [defendant] and set a more reasonable trial date . . . [m]y own thought is to have a trial date after the first of the year." Id.

No doubt Lehrman's personal physicians took his reports at face value and are sincerely trying to assist the court in properly evaluating defendant's medical situation, but the court does not accept Lehrman's assertions of debilitating pain as even moderately credible. First, the pattern is reasonably clear – defendant has made consistent efforts to postpone his trial, implying that his medical condition simply needed time to stabilize or resolve, but that hope of resolution continually recedes and an indefinite postponement seems to have been the real goal. Secondly, the government's evidence in opposition (videotapes of Lehrman strolling around with no difficulty, driving a car without difficulty, etc., even within one week of

4

the trial's scheduled commencement) pretty much put the lie to Lehrman's claim that he is suffering from pain of a degree likely to interfere in some meaningful way with his effective participation in the trial. In short, Lehrman's claims are not credible and the physician's letters are also not credible given that the physicians themselves were obviously deceived by Lehrman regarding the extent and debilitating nature of the pain he experiences as a result of his medical condition.

Moreover, Lehrman asked, and was permitted, to speak to the motion on his own behalf. Although generally unsupported (except by his own dubious reporting), his presentation was rational, articulate, and revealed a coherent and grounded perception of the nature of the proceedings, the issues at hand, and the factors relevant to resolving those issues. He exhibited no visible sign of being in pain – certainly not disabling pain – and the court observed him walking into the courtroom under his own power – with a cane, but with no apparent difficulty at all. (Also, subsequently, during jury selection, it was fairly obvious that Lehrman was mentally focused, not in any obvious or debilitating pain, and was able to consult with counsel.)

The court was not persuaded that any colorable claim of medical dangerousness was presented by Lehrman should his trial go forward. Lehrman and his counsel were given every opportunity to put on credible evidence on the issue and they failed to do so. Before the latest motion was filed, defendant was told that

5

more would be required than vague physician letters, and more was not forthcoming.

There certainly was no reason to think that Lehrman could not as easily sit in a courtroom as wander around a flea market and drive about town with his friends, as the videotape confirmed he could easily do. And, there was insufficient evidence that Lehrman's subjective complaints of severe pain (apparently accepted at face value by his treating physicians), or the effects of pain medication prescribed, raised any serious possibility that Lehrman was mentally incompetent or unable to participate in his defense – and certainly the evidence did not suggest that any serious or out of the ordinary medical repercussions might follow if Lehrman was required to finally proceed to trial. Proceeding to trial did not, in the court's judgment, pose a substantial danger to Lehrman's life or health, and no colorable claim of medical dangerousness was presented. See generally, United States v. Zannino, 895 F.2d 1 (1st Cir. 1990).

Although obviously not a factor in denying the motion at the outset of trial, the precision of hindsight confirms that Lehrman was perfectly capable of proceeding to trial and meaningfully participating in his defense. Defendant was advised at the start of trial that if he had some specific medical difficultly during trial he should raise the matter and all necessary accommodations would be made. No such requests were presented.

Accordingly, the latest motion to continue was denied.

6

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 4, 1999

cc:  Robert M. Kinsella, AUSA
     Robert A. Griffith, Esq.
     Matthew J. Lahey, Esq.
     William A. Brown, Esq.
     U.S. Probation
     U.S. Marshal